Filed 12/22/23  P. v. Ruiz CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JUAN CARLOS RUIZ,<br><br>        Defendant and Appellant. | A167157<br><br>(San Mateo County<br>Super. Ct. No. SC046239C) |

**MEMORANDUM OPINION**[1]

In 2001, a jury convicted Juan Carlos Ruiz of the murder of William Tejada, a fellow gang member, and the trial court sentenced him to 25 years to life for the murder.  This court affirmed the murder conviction.  (*People v. Reyes*, *et al.* (Apr. 19, 2004, A097648) [nonpub. opn.].)

In January 2019, Ruiz petitioned for resentencing under former Penal Code section 1170.95 (subsequent unlabeled statutory references are to this code),[2] alleging the criminal complaint allowed the prosecution to proceed under the theories of felony murder or natural and probable consequences,

---

[1] We resolve this case by memorandum opinion.  (Cal. Stds. Jud. Admin., § 8.1.)

[2] Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6, with no substantive changes in the statute.  (Stats. 2022, ch. 58, § 10.)  We cite to section 1172.6 for ease of reference.

1

that he was convicted pursuant to one of those theories, and that he could not presently be convicted of murder due to recent changes in the Penal Code. (Stats. 2018, ch. 1015, § 1, subd. (f); §§ 188, subd. (a)(3), 189, subd. (e).)

The trial court issued an order to show cause, and it conducted an evidentiary hearing in December 2022. The court ultimately denied the petition, concluding Ruiz was "an active participant in the murder," "had the intent to kill at the time of the commission of the crime and acted with malice aforethought." In so concluding, the court — over defense objection — relied upon Ruiz's testimony from a youthful offender parole hearing in October 2021.

In 2021, Ruiz testified he felt Tejada "had to be murdered . . . . And so, I ended up murdering [him], because he was an informant." Ruiz admitted "directing conversations with [his] co-defendants . . . . [W]e caught [Tejada] unawares . . . I murdered him. I convinced five other co-defendants . . . to take a man's life. I beat him, I kicked him, I stabbed him." He also said, "[s]omeone had handed me a screwdriver" and "because he was still alive, I wanted to end it. . . . I walked over to him, I stood over him and I stabbed him in the eye, I checked his pulse, and I stabbed him in the other eye. My intention was to end his life, because I didn't think [he] . . . deserved to live."

Ruiz contends the trial court erred by considering his parole hearing testimony. We disagree and address his arguments in turn. We review the court's ruling on the admissibility of the evidence for abuse of discretion. (*People v. Duran* (2022) 84 Cal.App.5th 920, 927–928.)

First, Ruiz argues his youthful parole hearing testimony was "coerced and therefore per se unreliable and inadmissible." He reasons parole hearings are inherently coercive because they create "a strong incentive" to

provide incriminating testimony to increase the chance of parole. We are unpersuaded.

When deciding whether a confession is involuntary, we ask whether the defendant was promised leniency and whether the promise motivated the decision to confess. (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1401.) If the government merely encourages a person to be honest but does not promise "some benefit beyond that which ordinarily results from being truthful," the confession is not involuntary. (*People v. Vasila* (1995) 38 Cal.App.4th 865, 874.)

At the outset, we decline Ruiz's invitation to conclude the parole hearing process is inherently coercive and statements made at parole hearings are per se unreliable and inadmissible. "[P]arole cannot be conditioned on admission of guilt to a certain version of the crime." (*People v. Myles* (2021) 69 Cal.App.5th 688, 706; Cal. Code Regs., tit. 15, § 2236 ["The board shall not require an admission of guilt to any crime for which the prisoner was committed," and a prisoner's refusal "to discuss the facts of the crime . . . shall not be held against" them].) Moreover, at the parole hearing here, Ruiz was represented by counsel, the process was explained to him, he was sworn in, and he was encouraged to be honest. The parole board did not promise leniency in exchange for his incriminating testimony. Given this record, the trial court did not abuse its discretion by admitting the evidence.

Next, Ruiz contends he should have been given use immunity for his parole hearing testimony under *People v. Coleman* (1975) 13 Cal.3d 867. He acknowledges courts have repeatedly rejected this argument, but he asks us to forge a different path. We decline to do so.

In *Coleman*, the prosecution began probation revocation hearings on grounds also underlying "independent criminal charges on which defendant

3

had been held to answer but had not yet been tried." (*People v. Coleman*, *supra*, 13 Cal.3d at p. 871.)  When Coleman declined to testify at the hearing, the trial court revoked his probation.  (*Ibid.*)  On appeal, he argued that holding the hearing prior to trial denied him procedural due process because he was forced to forego testifying to avoid incriminating himself at trial. (*Ibid.*)  In response, the California Supreme Court fashioned a "judicial rule of evidence" — upon objection, testimony "at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation, and any evidence derived from such testimony, is inadmissible against the probationer during subsequent proceedings on the related criminal charges."  (*Id.*, at p. 889.)

Ruiz argues the rule in *Coleman* should be given equal application here.  For the reasons set forth in *People v. Myles*, *supra*, 69 Cal.App.5th at pages 704 to 706 and other opinions reaching the same conclusion, we disagree.  (*People v. Duran*, *supra*, 84 Cal.App.5th at pp. 928–932; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 588–590; *People v. Anderson* (2022) 78 Cal.App.5th 81, 89–93; contra, *Mitchell*, at pp. 596–605 (dis. opn. of Stratton, P. J.).)

Finally, Ruiz argues his parole hearing testimony constituted unreliable hearsay and was therefore inadmissible.  Not so.  As the Attorney General notes, Ruiz's testimony was admissible as a party admission.  (Evid. Code, § 1220 ["Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party"].)  Nothing in that provision conditions admission of a statement on a reliability determination.  Indeed, Ruiz does not address Evidence Code section 1220 in his opening brief, the cases he cites therein do not concern the party admission exception to the hearsay rule, and he fails to respond to the

4

Attorney General's arguments in his reply brief. To the extent Ruiz could be interpreted as arguing his testimony was unreliable because it was coerced, that argument has been previously considered and rejected.

## DISPOSITION

The order denying Ruiz's petition for resentencing is affirmed.

_____
Rodríguez, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Fujisaki, J.

A167157